**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER **13** |
| | ) | CASE NO. **18-04036-jw** |
| **MYLES LOREN EDMUNDSON and** | ) | |
| *(aka Myles L Edmundson, aka Myles* | ) | |
| *Edmundson)* | ) | |
| **SANDRA KAY EDMUNDSON** | ) | |
| *(aka Sandra K Edmundson, aka Sandra K* | ) | |
| *Edmundson, aka Sandy Hulslander, aka* | ) | |
| *Sandra Edmundson, aka Sandra K* | ) | |
| *Hulslander, aka Sandy Edmundson, aka* | ) | |
| *Sandra Edmondson, aka Sandra Kay* | ) | |
| *Edmondson, aka Sandra Hulslander, aka* | ) | |
| *Sandra Kay Hulslander)* | ) | |
| | ) | NOTICE OF MOTION FOR |
| | ) | RELIEF FROM AUTOMATIC |
| | ) | STAY 11 U.S.C.  § 362 |
| DEBTORS | ) | |

**NOTICE OF MOTION FOR RELIEF FROM**
**THE AUTOMATIC STAY OF 11 U.S.C. 11 U.S.C. § 362**

TO: MYLES LOREN EDMUNDSON, DEBTORS AND JAMES M. WYMAN, TRUSTEE AND THOSE NAMED IN THE ATTACHED MOTION.

PLEASE TAKE NOTICE THAT a hearing will be held on the attached motion on:

Date: October 17, 2019

Time: 11:00 a.m.

Place: <u>CHARLESTON</u>: KING AND QUEEN BUILDING, 145 KING STREET, ROOM 225, CHARLESTON, SC 29401

Within fourteen (14) days after service of the attached motion, the notice of motion, the movant's certification of facts, (and a blank certification of facts form, applicable only to motions for relief from the automatic stay and for service on *pro se* parties only), any party objecting to the relief sought shall:

(1) File with the Court a written objection to the 11 U.S.C. § 362 Motion;

(2) File with the Court a certification of facts (for motions for relief from the automatic stay);

(3) Serve on the movant items 1 and 2 above at the address shown below; and

(4) File a certificate of such service with the Court.

If you fail to comply with this procedure, you may be denied the opportunity to appear and be heard on this proceeding before the Court.

DATE OF ISSUANCE: September 10, 2019

MOVANT:      Real Estate Growth Fund, LLC

ATTORNEY: **McMichael Taylor Gray, LLC**

/s/ J. Pamela Price
J. Pamela Price (I.D. 14336)
Attorney for Movant
3550 Engineering Drive
Suite 260
Peachtree Corners, GA 30092
pprice@mtglaw.com
(404) 474-7149

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER **13** |
| | ) | CASE NO. **18-04036-jw** |
| **MYLES LOREN EDMUNDSON and** | ) | |
| *(aka Myles L Edmundson, aka Myles* | ) | |
| *Edmundson)* | ) | |
| **SANDRA KAY EDMUNDSON** | ) | |
| *(aka Sandra K Edmondson, aka Sandra K* | ) | |
| *Edmundson, aka Sandy Hulslander, aka* | ) | |
| *Sandra Edmundson, aka Sandra K* | ) | |
| *Hulslander, aka Sandy Edmundson, aka* | ) | |
| *Sandra Edmondson, aka Sandra Kay* | ) | |
| *Edmondson, aka Sandra Hulslander, aka* | ) | |
| *Sandra Kay Hulslander)* | ) | |
| | ) | MOTION FOR RELIEF |
| | ) | FROM AUTOMATIC |
| | ) | STAY 11 U.S.C. § 362 |
| DEBTORS | ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

COMES NOW Real Estate Growth Fund, LLC (hereinafter "Movant"), a secured Movant in the above- captioned case, by and through counsel, McMichael Taylor Gray, LLC, and moves this Court to enter an order granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362(a) on the following grounds:

1.    That Real Estate Growth Fund, LLC is a secured Movant of the Debtors and thus a party in interest.

2.    On August 8, 2018, the above-captioned Debtors filed a petition with the Bankruptcy Court for the District of South Carolina, Charleston Division under Chapter 13 of Title 11 of the United States Bankruptcy Code.

3.      On or about February 16, 2005, Mary L. Hulslander, deceased, and Robert L. Hulslander, deceased, executed and delivered to Capital One F.S.B. a Mortgage recorded in the Wilson County Register of Deeds in Book 2088 at Page 705 and recorded on February 28, 2005 (hereinafter "Mortgage") with an address of 501 East Center Street, Black Creek, NC 27813. (hereinafter "Collateral")

4.      Movant holds a Home Equity Credit Line Agreement and Disclosure Statement secured by the Mortgage which describes real property owned by Mary L. Hulslander, deceased, and Robert L. Hulslander, deceased in the original principal amount of $49,500.00 and dated February 16, 2005 (hereinafter "Note"). A copy of the Note, Allonge(s), Mortgage, and Assignment(s) of Mortgage are attached hereto as Composite Exhibit "A" respectively.

5.      Upon information and belief, Debtor, Sandra K Edmundson aka Sandra Hulslander is heir to the estate of Robert L. Hulslander, and thus has an interest in the property.

6.      Based on the Wilson County Tax Office, the value of the Property is approximately $98,630.00.

7.      Upon information and belief, the approximate payoff, exclusive of legal fees and expenses incurred in the connection with the instant motion, due and owing to the Movant as of July 29, 2019 is $40,532.56.

8.      The Debtors' failure to make regular monthly post-petition mortgage payments to Movant as they become due results in a unilateral modification of the mortgage and note between the parties in violation of 11 U.S.C. Section 1322(b)(2). Debtors are now due for the September 20, 2018 payment.

9.    Due to the Debtors failure to make payments to Movant, the Debtors have

not and cannot offer Movant adequate protection of its interest in the Property, and Movant

avers it is not adequately protected.

10.    Movant agrees to waive any claim that may arise under 11 U.S.C. §

503(b) or §507(b) as a result of this Order.  The Movant further agrees that any funds

realized from the liquidation of its collateral/foreclosure sale, in excess of all liens, costs

and expenses shall be paid to the Trustee.


**WHEREFORE**, Movant prays the Court as follows:


1.    Modify the Automatic Stay of 11 U.S.C. § 362 to permit Real Estate Growth

Fund, LLC to immediately proceed to foreclose its security interest in the property

described in Exhibit "A" annexed to this Motion and otherwise pursue any remedies

available under state law to recover and liquidate its collateral;

2.    Modify Rule 4001(a)(3) of the Bankruptcy Code so that it is not applicable

in this case and so Movant may immediately enforce and implement this order granting

relief from the automatic stay;

3.    As an alternative to the relief prayed for above, grant adequate protection to

Movant for its interest in the Collateral;

4.    Movant specifically requests permission to communicate with the Debtors

and Debtors' counsel to the extent necessary to comply with applicable non-bankruptcy

law; and

5.      Grant Movant such other and further relief as the Court deems just and

proper.

This 10th day of September, 2019.

ATTORNEY: **McMichael Taylor Gray, LLC**

/s/ J. Pamela Price
J. Pamela Price (I.D. 14336)
Attorney for Movant
3550 Engineering Drive
Suite 260
Peachtree Corners, GA 30092
pprice@mtglaw.com
(404) 474-7149

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER **13** |
| | ) | CASE NO. **18-04036-jw** |
| **MYLES LOREN EDMUNDSON and** | ) | |
| *(aka Myles L Edmundson, aka Myles* | ) | |
| *Edmundson)* | ) | |
| **SANDRA KAY EDMUNDSON** | ) | |
| *(aka Sandra K Edmondson, aka Sandra K* | ) | |
| *Edmundson, aka Sandy Hulslander, aka* | ) | |
| *Sandra Edmundson, aka Sandra K* | ) | |
| *Hulslander, aka Sandy Edmundson, aka* | ) | |
| *Sandra Edmondson, aka Sandra Kay* | ) | |
| *Edmondson, aka Sandra Hulslander, aka* | ) | |
| *Sandra Kay Hulslander)* | ) | |
| | ) | CERTIFICATION OF |
| | ) | STATEMENT OF FACTS |
| | ) | |
| _____ DEBTORS _____ | ) | |

In the above-entitled proceeding, in which relief sought by Real Estate Growth Fund, LLC from the automatic stay provided by 11 U.S.C. § 362, I do hereby certify to the best of my knowledge the following:

(1)  <u>Nature of Movant's Interest:</u>  Movant is the current holder of the Mortgage which describes real property owned by Debtors and known as: 501 East Center Street, Black Creek, NC 27813 ("Property")

(2)  <u>Brief Description of Security Interests, (copy attached):</u>  Mortgage

 (3)  <u>Description of Property Encumbered by Stay (include serial number, lot and block number, etc.).</u> THE FOLLOWING DESCRIBED REAL ESTATE IN THE CITY OR TOWN OF BLACK CREEK, BLACK CREEK TOWNSHIP, WILSON COUNTY, NORTH CAROLINA: BEGINNING AT AN IRON STAKE AT THE INTERSECTION OF THE SOUTHERN PROPERTY LINE OF PEARSON STREET WITH THE EASTERN PROPERTY LINE OF CENTER STREET, THENCE WITH AND ALONG

THE SOUTHERN PROPERTY LINE OF PEARSON STREET SOUTH 88 DEGREES
39' 00" EAST 205.60 FEET TO AN IRON STAKE, CORNERING; THENCE SOUTH
05 DEGREES 57' 00" WEST 115.33 FEET TO AN IRON STAKE, CORNERING;
THENCE NORTH 89 DEGREES 16' 54" WEST 205.70 FEET TO AN IRON STAKE
IN THE EASTERN PROPERTY LINE OF SAID CENTER STREET, ,THENCE WITH
AND ALONG THE EASTERN PROPERTY LINE OF CENTER STREET NORTH 05
DEGREES 54' 12" EAST 117.60 FEET TO THE POINT AND PLACE OF
BEGINNING. BGEING THE IDENTICAL PROPERTY DEBISED BY SARAH
PEARSON BALDREE TO SARAH BALDREE HUNT.

 (4)  <u>Basis for Relief:</u>  Lack of adequate protection. Pursuant to 11 U.S.C. § 362(d)(1) and
(2). Mortgage payments are not being made to the Movant as required by the terms of the
Note and Mortgage. As such, Movant's interests are not adequately protected.

 (5)  <u>Prior Adjudication by Other Courts, copy attached (Decree of Foreclosure, Order for
Possession, Levy of Execution, etc., if applicable).</u> N/A

 (6)  <u>Valuation of Property, copy of Valuation attached (Appraisal, Blue Book, etc.):</u>

|  |  |
|---|---|
| Fair Market Value | $98,630.00 |
| Movant's Lien: | $40,532.56 |
| Other Liens: | $0.00 |
| (Midland Funding) | |
| Net Equity | $58,097.44 |
| Source/Basis of Value | Wilson County Tax Card |

 (7)  <u>Amount of Debtors's Estimated Equity (using figures from paragraph 6):</u> $58,097.44

 (8)  <u>Month and Year in Which First Direct Post-petition Payment Came Due to Movant

(if applicable):</u> September 8, 2018

(9)(a)  <u>For Movant/Lien Holder (if applicable): List or attach a list of all post-petition payments received by lien holder directly from the Debtors, clearly showing date and amount of payment received and month and year of which each payment was applied.</u>

(b)  <u>For Objecting Party (if applicable): List or attach a list of all post-petition payments included in the Movant's list from (a) above which objecting party disputes as having been made.  Attach written proof of such payment(s) or a statement as to why such proof is not available at the time of filing this objection.  N/A</u>

 (10)  <u>Month and Year for Which Post-petition Account of Debtors are Due as of the Date of this Motion</u>:  September 8, 2018

See attached payment history marked as Exhibit "B".

This 10th day of September, 2019.

/s/ J. Pamela Price
J. Pamela Price (I.D. 14336)
Attorney for Movant
3550 Engineering Drive
Suite 260
Peachtree Corners, GA 30092
pprice@mtglaw.com
(404) 474-7149

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER **13** |
| | ) | CASE NO. **18-04036-jw** |
| **MYLES LOREN EDMUNDSON and** | ) | |
| *(aka Myles L Edmundson, aka Myles* | ) | |
| *Edmundson)* | ) | |
| **SANDRA KAY EDMUNDSON** | ) | |
| *(aka Sandra K Edmondson, aka Sandra K* | ) | |
| *Edmundson, aka Sandy Hulslander, aka* | ) | |
| *Sandra Edmundson, aka Sandra K* | ) | |
| *Hulslander, aka Sandy Edmundson, aka* | ) | |
| *Sandra Edmondson, aka Sandra Kay* | ) | |
| *Edmondson, aka Sandra Hulslander, aka* | ) | |
| *Sandra Kay Hulslander)* | ) | |
| | ) | |
| | ) | CERTIFICATE OF SERVICE |
| | ) | |
| DEBTORS | ) | |

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing NOTICE OF

MOTION, MOTION FOR RELIEF FROM AUTOMATIC STAY, CERTIFICATION

OF FACTS and CERTIFICATE OF SERVICE in the above captioned case were this day

served upon the below named persons via Regular U.S. Mail and/or Electronic Mail

(CM/ECF) to the parties listed on the attached service list, this 10th day of September,

2019.

## <u>VIA U.S. MAIL</u>

Myles Loren Edmundson
609 University Forest Circle
Conway, SC 29526

Sandra Kay Edmundson
609 University Forest Circle
Conway, SC 29526

**<u>VIA CM/ECF</u>**

Elizabeth R Heilig
Meredith Law Firm LLC
2411 N. Oak Street
Suite 107
Myrtle Beach, SC 29577

James M. Wyman
PO Box 997
Mount Pleasant, SC 29465-0997

U.S. Trustee
US Trustee's Office
Strom Thurmond Federal Buiding
1835 Assembly Street
Suite 953
Columbia, SC 29201

This 10th day of September, 2019.

**McMichael Taylor Gray, LLC**

<u>/s/ J. Pamela Price</u>
J. Pamela Price (I.D. 14336)
Attorney for Movant
3550 Engineering Drive
Suite 260
Peachtree Corners, GA 30092
pprice@mtglaw.com
(404) 474-7149

# EXHIBIT A

Prepared by: LYNDA SNODDY

**Capital One F.S.B.**

DATE:    02/14/2005
BORROWER: MARY L. HULSLANDER
CASE #:

1571 Sawgrass Corp. PKWY,  SFL-01
Sunrise, FL 33323
Phone: (866) 896-9597
Br Fax No.: (866) 860-0401

PROPERTY ADDRESS: 501 EAST CENTER STREET
BLACK CREEK, NC 27813

## HOME EQUITY CREDIT LINE AGREEMENT AND
## DISCLOSURE STATEMENT

Date: 02/16/2005

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
Capital One F.S.B.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
Capital One F.S.B.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 4 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 11.B, 11.D, 12.B or 15.A below.) You will not make any loan before the fourth business day following the signing of this Agreement.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) paying closing costs and finance charges in accordance with paragraph 7.C below; (iii) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (iv) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Deed of Trust; or (v) any other method or procedure you establish.

**3. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, and other charges I owe to you now or in the future, together with reasonable attorneys' fees. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement monthly. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, without penalty. If I pay my entire "New Balance" shown on my periodic statement for any billing cycle by the "Payment Due Date," any periodic finance charge incurred from the first day of the next billing cycle until the posting of my payment will appear on my periodic statement for the next billing cycle.

D. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 12.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

E. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

● HELOC - NC Agreement & Disclosure
2C505-NC (09/04)(d)

Page 1 of 8

Initials: _M·J·H_

F. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." If the Draw Period on my Account is 36 months, my "Minimum Payment Due" during the Repayment Period equals 1/120th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**4. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 49,500.00        . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

## 5. ANNUAL PERCENTAGE RATE.

[X] A. The initial Daily Periodic Rate is 0.01370 %. The initial **ANNUAL PERCENTAGE RATE** is 5.000 %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 5.C below had been used, in which event the initial Daily Periodic Rate would be 0.01507 % and the initial **ANNUAL PERCENTAGE RATE** would be 5.500 %. These discounted rates will be in effect from the date of this Agreement until 02/28/2005            . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 5.C below.

[ ] B. The initial Daily Periodic Rate is N/A % and the initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 5.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 5.C above to determine my **ANNUAL PERCENTAGE RATE** is 0.250 %.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above 11.950 % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**6. FINANCE CHARGE.** I agree to pay finance charges on my Account as explained below.

### A. Periodic FINANCE CHARGE.

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(2) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance.

N/A = Not Applicable

● HELOC - NC Agreement & Disclosure
2C505-NC (09/04)

Initials: *m.y.N.*

Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

**B. Other FINANCE CHARGES.**

**(1) Origination Fee FINANCE CHARGE.**

I agree to pay an Origination Fee **FINANCE CHARGE** of $ 400.00                    at the time I sign this Agreement.

| | |
|---|---|
| | $ _____ |
| Processing Fee | $        400.00 |
| | $ _____ |
| | $ _____ |
| | $ _____ |

**(2) Broker Fee FINANCE CHARGES.**

I agree to pay Broker Fee **FINANCE CHARGES** of $ N/A                    at the time I sign this Agreement.

| | |
|---|---|
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |

**(3) Settlement Agent FINANCE CHARGES.**

I agree to pay the following Settlement Agent **FINANCE CHARGES** at the time I sign this Agreement:

| | |
|---|---|
| Attorney's Fee | $          0.00 |
| Closing/Escrow | $        485.00 |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |

**7. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) I agree to pay a Return Item Fee of $20 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| Tax Service Fee FINANCE CHARGE | $          60.00 |
| Flood Check Fee FINANCE CHARGE | $          20.00 |
| Credit Report Fee | $          35.00 |
| Title Examination Fee | $         295.00 |
| Title Insurance | $         152.00 |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |

| | |
|---|---|
| LESS Amounts Paid by Lender | $          0.00 |
| Total Paid by Borrower | $       1,447.00 |

C. I may elect to pay the closing costs described in paragraph 7.B and the finance charges described in paragraph 6.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

**8. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Deed of Trust (the "Deed of Trust") covering my dwelling located at
501 EAST CENTER STREET, BLACK CREEK, NC 27813
(the "Real Property"). The Deed of Trust is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**9. SECTION INTENTIONALLY OMITTED.**

**10. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Deed of Trust or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**11. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 11.B below during the period that any of the following events or conditions occur:

(1)   the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2)   you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3)   I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 13 below;

(4)   government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5)   government action (such as imposition of a tax lien) impairs the priority of the lien of the Deed of Trust such that the value of the lien of the Deed of Trust is less than 120% of my Credit Limit;

(6)   the maximum Annual Percentage Rate set forth in paragraph 5.E above is reached.

(7)   the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 11.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A above or 12.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Deed of Trust is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 11.A above or 12.A below has occurred.

Initials 

E. If an event or condition described in paragraph 11.A above occurs which is also ▮▮▮▮▮▮▮▮▮▮▮ described in paragraph 12.A below, your rights and remedies described under paragraph 12.B below apply and supersede your rights described in this paragraph 11.

## 12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.

A. You may take the actions listed in paragraph 12.B below if any of the following events or conditions occur:

    (1)   I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

    (2)   I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Deed of Trust;

    (3)   I sell or transfer title to the Real Property without first obtaining your written permission;

    (4)   I fail to maintain insurance on the Real Property as required under this Agreement or the Deed of Trust;

    (5)   I act or fail to act and as a result a lien senior to the lien of the Deed of Trust is filed against the Real Property;

    (6)   I die and I am not survived by another person obligated as a Borrower under this Agreement;

    (7)   All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

    (8)   A prior lienholder on the Real Property begins foreclosure under its security document;

    (9)   The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

    (10)   I fail to pay taxes on the Real Property; or

    (11)   My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

        (a)   A judgment is filed against me;

        (b)   I commit waste or otherwise destructively use or fail to maintain the Real Property;

        (c)   I die and I am survived by another person obligated as a Borrower under this Agreement; or

        (d)   I move out of the Real Property.

B. If an event described in paragraph 12.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

    (1)   you may terminate any of my rights under my Account;

    (2)   you may temporarily or permanently refuse to make any additional loans;

    (3)   you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

    (4)   you may invoke the power of sale under the Deed of Trust;

    (5)   you may reduce my Credit Limit; and

    (6)   you may take any other action permitted by this Agreement, by law or in equity.

## 13. MY IMPORTANT OBLIGATIONS. I agree that:

Initials _m. z. H_

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Deed of Trust.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property.

H. I will not permit a lien to be filed which takes priority over the Deed of Trust for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Deed of Trust such as:

  (1) my promise not to exceed my Credit Limit; and

  (2) my "Important Obligations" listed in the Deed of Trust.

J. Before you renew a Draw Period or increase my Credit Limit on my Account, I may need to execute additional documents in order to secure the payment of any loans advanced during any renewed Draw Period or under the increased Credit Limit.

**14. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**15. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 15.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 11.D above.

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 11.B or 12.B above or my exercise of my suspension or termination rights under paragraphs 11.D or 15.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 12.B above. I must return unused Equity Credit Line Checks to you upon termination.

**16. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

  (1) if the original Index is no longer available, you may change the Index and Margin;

  (2) you may make any change I agree to in writing;

  (3) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

Initials 

(4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

## 17. OTHER PROVISIONS.

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Deed of Trust at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Deed of Trust as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Deed of Trust), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

H. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

I. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

J. Payment Marked "Payment in Full". I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to**
Customer Service
P.O. BOX 5170, SIMI VALLEY, CA 93062-5170

K. Enforcement. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

Initials m.2.N.
QLA

L. <u>Notices</u>. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 17.L and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at

Customer Service
P.O. BOX 5170, SIMI VALLEY, CA 93062-5170

or to such other address as you may designate by written notice to me as provided in this paragraph 17.L.

M. <u>Riders/Addenda</u>. The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

☐ No Cost Addendum                          ☐ _____ Rider
☐ _____ Addendum
☒ Billing Rights Statement

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

Borrower: MARY L. HULSLANDER _____ Date 2/16/2005

Borrower: ROBERT L. HULSLANDER _____ Date 2/16/2005

Borrower: _____ Date

Borrower: _____ Date

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC
WITHOUT RECOURSE
CAPITAL ONE, F.S.B
BY _____
DARLENE PADILLA
COLLATERAL PROCESSING OFFICER
TREASURY BANK, N.A.
AS ATTORNEY IN FACT FOR
CAPITAL ONE, F.S.B

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY _____
David A. Spector
Managing Director

Prepared by: LYNDA SNODDY

Capital One F.S.B.

DATE:      02/14/2005
BORROWER: MARY L. HULSLANDER
CASE #:

1571 Sawgrass Corp. PKWY,  SPL-01
Sunrise, FL 33323
Phone: (866) 896-9597
Br Fax No.: (866) 860-0401

PROPERTY ADDRESS: 501 EAST CENTER STREET
BLACK CREEK, NC 27813

This notice of my billing rights is a Rider to and supplements my/our Home Equity Credit Line Agreement and Disclosure Statement.

## MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I Must Notify You In Case of Errors Or Questions About My Bill.

If I think my bill is wrong, or I need more information about a transaction on my bill, I must write you on a separate sheet at the address listed on my bill. I must write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

- My name and account number.

- The dollar amount of the suspected error.

- I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I must describe the item I am not sure about.

### My Rights and Your Responsibilities
### After You Receive My Written Notice

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

HELOC - Billing Rights Notice
2C482-XX (06/02)(d)

Initials: M.J.N.    Initials:

BOOK 2088 PAGE 705

NORTH CAROLINA
WILSON COUNTY
FILED FOR REGISTRATION
AT 12:200 O'CLOCK & P.M. 28 DAY OF
Feb 2005 AND RECORDED
IN BOOK 2088 PAGE 705
Audrey R Neal
REGISTER OF DEEDS
By Karen & Webb. DP

RETURN
National Real Estate Information
100 Beecham Dr.    Services
TO Pittsburgh, PA 15205

**DEED OF TRUST**
(Line of Credit)

00:113

After Recording ~~Return To:~~

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
LYNDA SNODDY
Capital One F.S.B.

1571 Sawgrass Corp. PKWY,
SFL-01
Sunrise
FL 33323



**THIS DEED OF TRUST SECURES A HOME EQUITY LINE OF CREDIT AGREEMENT OF EVEN DATE HEREWITH AND IS GOVERNED BY THE PROVISIONS OF ARTICLE 9 OF CHAPTER 45 OF THE GENERAL STATUTES OF NORTH CAROLINA, N.C.G.S. SECTION 45-81, ET SEQ. THE MAXIMUM PRINCIPAL AMOUNT THAT MAY BE SECURED AT ONE TIME IS $ 49,500.00**

THIS DEED OF TRUST, dated    FEBRUARY 16, 2005    , is between
MARY L HULSLANDER, AND ROBERT L HULSLANDER, H/W T/E

residing at
501 EAST CENTER STREET, BLACK CREEK, NC 27813
the person or persons signing as "Grantor(s)" below and hereinafter referred to as "we," "our," or "us" and
TRUSTEE SERVICES OF CAROLINA, LLC
as trustee and hereinafter referred to as the "Trustee," with an address of
5919 OLEANDER DRIVE SUITE 115, WILMINGTON, NC 28403
for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS")  a Delaware corporation, with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **MERS is the "Beneficiary" under this Deed of Trust** and is acting solely as nominee for
Capital One F.S.B.
("Lender" or "you") and its successors and assigns, with an address of
1680 Capital One Drive, McLean, VA 22102

● MERS HELOC - Deed of Trust
2E013-NC (02/04)(d)                        Page 1 of 5                        Initials: M. Z. N,

PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to the Trustee the premises located at:    501 EAST CENTER STREET, BLACK CREEK

Street, Municipality

WILSON    , North Carolina    27813    (the "Premises").
County    ZIP

and further described as:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

PARCEL ID #: 3618761891.000    .The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

LOAN: This Deed of Trust will secure your loan to us in the principal amount of $ 49,500.00    or so much thereof as may be advanced and readvanced from time to time to
MARY L. HULSLANDER
ROBERT L. HULSLANDER

and

the Borrower(s) under the Home Equity Credit Line Agreement and Disclosure Statement (the "Note") dated    FEBRUARY 16, 2005    , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Deed of Trust will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Deed of Trust, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Deed of Trust entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note. The balance of the Note, if not sooner paid, is due and payable on    FEBRUARY 15, 2030    .

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage, grant and convey the Premises to the Trustee.

OUR IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Deed of Trust is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Deed of Trust, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

Initials: 

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Deed of Trust.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Note secured hereby.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Deed of Trust, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Deed of Trust secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Deed of Trust. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Deeds of Trust.

(g) PRIOR DEED OF TRUST: If the provisions of this paragraph are completed, this Deed of Trust is subject and subordinate to a prior deed of trust dated _____ and given by us for the benefit of _____

as beneficiary, in the original amount of $ 0.00 (the "Prior Deed of Trust"). We shall not increase, amend or modify the Prior Deed of Trust without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Deed of Trust promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Deed of Trust as and when required under the Prior Deed of Trust.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(j) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Deed of Trust may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Deed of Trust without losing your rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, the Trustee may foreclose upon this Deed of Trust or sell the Premises at a public sale for cash, after having first given such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or decree of court as may then be required by law and giving such notice and advertising the time and place of such sale in such manner as may then be provided by law, and upon such sale under power of sale to convey title to the Purchaser in as full and ample manner as the Trustee is empowered. The Trustee shall be authorized to retain an attorney to represent the Trustee in such foreclosure proceedings. The proceeds of the sale shall, after the Trustee retains his commission, together with reasonable attorneys' fees incurred by the Trustee in such proceeding, be applied to the costs of the sale, including but not limited to, costs of collection, taxes, assessments, costs of recording, service fees and incidental expenditures, the amount due on the Note hereby secured and advances and other sums expended by the Beneficiary according to the provisions hereof. The Trustee's commission shall be five percent (5%) of the gross proceeds of the sale for a completed foreclosure sale. In the event a foreclosure is commenced but not completed, we shall pay all expenses incurred by the Trustee, including reasonable attorneys' fees and a partial commission computed on five percent (5%) of the outstanding balance, whichever is greater, in accordance with the following schedule, to wit: one-fourth (1/4) thereof before the Trustee has issued a notice of hearing on the right to foreclosure; one-half (1/2) thereof after issuance of said notice; three-fourths (3/4) thereof after such hearing; and, the full commission after the initial sale. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Deed of Trust and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

MERS HELOC - Deed of Trust
2E013-NC (02/04)

Page 3 of 5

Initials: M.J.N.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Deed of Trust. Until the Note has been paid in full and our obligation to make further advances under the Note has been terminated, the provisions of this Deed of Trust will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Deed of Trust is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Deed of Trust, and provided any obligation to make further advances under the Note has terminated, this Deed of Trust and your rights in the Premises shall end.

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at
For MERS:
P.O. Box 2026, Flint, MI 48501-2026
For Lender:
1680 Capital One Drive, McLean, VA 22102
or to such other address as you may designate by notice to us. Any notice provided for in this Deed of Trust shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Deed of Trust and provided your obligation to make further advances under the Note has terminated, the Trustee shall discharge this Deed of Trust without charge to us, except that we shall pay any fees for recording of a satisfaction of this Deed of Trust.

GENERAL: You or the Trustee can waive or delay enforcing any of your rights under this Deed of Trust without losing them. Any waiver by you of any provisions of this Deed of Trust will not be a waiver of that or any other provision on any other occasion.

SUBSTITUTION OF TRUSTEE: In the event of the death, removal, resignation, or refusal or inability to act of Trustee, Beneficiary shall have the irrevocable power, with or without cause, without notice of any kind, without specifying any reason therefor, and without applying to any court, to select and appoint a successor trustee by filing a deed or other instrument of appointment for record in each office in which this Deed of Trust is recorded, and upon such recordation the successor trustee shall become vested with the same powers, rights, duties and authority of the Trustee with the same effect as if originally made Trustee hereunder. Such successor shall not be required to give bond for the faithful performance of its duties unless required by Beneficiary.

THIS DEED OF TRUST has been signed by each of us under seal on the date first above written.

WITNESS:

_____


_____


_____ (SEAL)
MARY L. HULSLANDER
                          Grantor:

_____ (SEAL)
ROBERT L. HULSLANDER
                          Grantor:

_____ (SEAL)
                          Grantor:

_____ (SEAL)
                          Grantor:

BOOK 2088 PAGE 710

EXHIBIT A

THE FOLLOWING DESCRIBED REAL ESTATE IN THE CITY OR TOWN OF
BLACK CREEK, BLACK CREEK TOWNSHIP, WILSON COUNTY, NORTH
CAROLINA: BEGINNING AT AN IRON STAKE AT THE INTERSECTION OF
THE SOUTHERN PROPERTY LINE OF PEARSON STREET WITH THE
EASTERN PROPERTY LINE OF CENTER STREET, THENCE WITH AND
ALONG THE SOUTHERN PROPERTY LINE OF PEARSON STREET SOUTH 88
DEGREES 39' 00" EAST 205.60 FEET TO AN IRON STAKE,
CORNERING; THENCE SOUTH 05 DEGREES 57' 00" WEST 115.33 FEET
TO AN IRON STAKE, CORNERING; THENCE NORTH 89 DEGREES 16'
54" WEST 205.70 FEET TO AN IRON STAKE IN THE EASTERN
PROPERTY LINE OF SAID CENTER STREET, THENCE WITH AND ALONG
THE EASTERN PROPERTY LINE OF CENTER STREET NORTH 05 DEGREES
54' 12" EAST 117.60 FEET TO THE POINT AND PLACE OF
BEGINNING. BEING THE IDENTICAL PROPERTY DEVISED BY SARAH
PEARSON BALDREE TO SARAH BALDREE HUNT.

ADDRESS: 501 E CENTER ST.;  BLACK CREEK, NC 27813    TAX MAP
OR PARCEL ID ███████████████████

**STATE OF NORTH CAROLINA,**

County ss: Wilson

I, Robin D. Parker , a Notary Public of the County of NASH

State of North Carolina, do hereby certify that Mary L Huslander and Robert L Huslander

The foregoing instrument.

personally appeared before me this day and acknowledged the due execution of

Witness my hand and official seal this 16th day of February , 2005 .

My Commission Expires: 5-1-2007

Robin D Parker

Notary Public

**STATE OF NORTH CAROLINA,**

The foregoing certificate of Wilson Robin D Parker

a Notary Public of the County of Nash

certified to be correct.

County ss:

, State of NC , is

This 28 day of Feb 2005 . Audrey R Neal

Registrar of Deeds

By Karen L Webber

Deputy Assistant

See attached

If you want information about coverage or need assistance to resolve complaints please call our toll free number: 1-800-729-1902. If you make a claim under your policy, you must furnish written notice in accordance with Section 3 of the Conditions and Stipulations.

Visit our World-Wide Web site at: http://www.stewart.com

POLICY OF TITLE INSURANCE ISSUED BY

# STEWART TITLE

## GUARANTY COMPANY

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, STEWART TITLE GUARANTY COMPANY, a Texas corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than ~~as stated therein~~;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the ~~title~~;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

In witness whereof, Stewart Title Guaranty Company has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.

**STEWART TITLE**
GUARANTY COMPANY

_Chairman of the Board_

_President_

Countersigned by:

Authorized Signatory
**National Real Estate Information Services**
Company         **290 Bilmar Drive**
                **Pittsburgh, PA 15205**

City, State

*(seal: STEWART TITLE GUARANTY — INCORPORATED — 1908 — TEXAS)*

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the ~~Company will not pay loss or damage, costs, attorneys' fees or~~ expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

BOOK 2542 PAGE 523

Doc ID: 004185060001 Type: CRP
Recorded: 07/31/2013 at 11:14:17 AM
Fee Amt: $26.00 Page 1 of 1
WILSON, NC
Lisa J. Stith Register of Deeds
BK 2542 PG 523

CORPORATION ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS, 1901 E VOORHEES ST, STE C, DANVILLE, IL 61834, hereby grants, assigns and transfers to:
E*TRADE BANK
671 N GLEBE ROAD, ARLINGTON, VA 22203

All beneficial interest under that certain Deed of Trust dated 2/16/05, executed by: MARY L HULSLANDER and ROBERT L HULSLANDER, Trustor as per TRUST DEED recorded as Instrument No. ___ on 2/28/05 in Book 2088 Page 705 of official records in the County Recorder's Office of WILSON County, NORTH CAROLINA.
Tax Parcel = 3013-70-1891
Original Mortgage $49,500.00
501 EAST CENTER STREET, BLACK CREEK, NC 27813

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: _JUL 11 2013_     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS

By _____
    SHANNON MAYFIELD, VICE PRESIDENT

State of California
County of LOS ANGELES

On _JUL 11 2013_ before me, R.C. PEETE, Notary Public, personally appeared SHANNON MAYFIELD, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
           R.C. PEETE

R.C. PEETE
COMM. #1953645
Notary Public - California
Los Angeles County
My Comm. Expires Sep. 24, 2015

Prepared by: MARIELA PINTOS
Recording requested by AND
When recorded mail to:
BANK OF AMERICA, N.A.
DOCUMENT PROCESSING MAIL CODE
TX2-979-01-19
4500 AMON CARTER BLVD
FORT WORTH, TX, 76155
Attn: ASSIGNMENT UNIT
Phone#: (626) 486-3574

Record & Return To:
Title 365
750 Highway 121 Bypass
Lewisville, Texas 75067
412-893-2358

Type: CRP
Recorded: 10/2/2018 11:40:11 AM
Fee Amt: $26.00  Page 1 of 3
Wilson, NC
Lisa J. Stith Register of Deeds

**BK 2759  PG 186 - 188**

Deal Name: Title 365
NC, Wilson County

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned,
**E\*TRADE BANK BY VERIPRO SOLUTIONS, INC., A DELAWARE CORPORATION AS ATTORNEY IN FACT**, 950 Cypress Waters Blvd., Coppell, TX 75019, herein ("Assignor"), does hereby grant, sell, assign, transfer and convey, without recourse unto **Veripro Solutions, Inc.**, P.O. Box 3572, Coppell, TX 75019 herein ("Assignee") that certain DEED OF TRUST recorded in **Wilson County, NC** referenced below;

**Borrower: Mary L. Hulslander and Robert L. Hulslander, H/W T/E**
**Original Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS"), SOLELY AS NOMINEE FOR CAPITAL ONE F.S.B.**
**Dated: 02/16/2005 Recorded: 02/28/2005 Book: 2088 Page: 705 Instrument: 002113 in Wilson County, NC**
**Loan Amount: 49,500.00**
**Trustee: TRUSTEE SERVICES OF CAROLINA, LLC**
**Property: 501 East Center Street, Black Creek, NC 27813**
**Parcel Tax ID: 3618761891.000**

**Legal description is attached hereto and made a part hereof as Exhibit "A"**

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said document referenced above.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the document above-described.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered,
effective _9D8N8_

E\*TRADE BANK BY VERIPRO SOLUTIONS, INC., A
DELAWARE CORPORATION AS ATTORNEY IN FACT

By: _____
Name: Gary Davenport
Title: Vice-President

POA recorded 08/22/2018
Book: 2754, Page: 790

Submitted electronically by "Title 365, Inc."
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Wilson County Register of Deeds.

# ACKNOWLEDGMENT

**State of Texas**

**County of Denton**

On _____*9/28/18*_____, before me, Richard Joshua Hipo, Notary Public, in and for said State, personally appeared Gary Davenport, Vice-President of E*TRADE BANK BY VERIPRO SOLUTIONS, INC., A DELAWARE CORPORATION AS ATTORNEY IN FACT,[ ✓ ] personally known to me or [ — ] ~~proved to me on the basis of satisfactory evidence through the~~ presentation of ____*N/A*_____ [description of evidence] to be the person whose name is subscribed to the within instrument who acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person or entity on behalf of which the person acted, executed the instrument.

**WITNESS my hand and official seal.**

_____

Notary Public: Richard Joshua Hipo

My Commission Expires: 3/4/22



Richard Joshua Hipo
My Commission Expires
03/04/2022
ID No 128196184

**Exhibit "A"**

THE FOLLOWING DESCRIBED REAL ESTATE IN THE CITY OR TOWN OF
BLACK CREEK, BLACK CREEK TOWNSHIP, WILSON COUNTY, NORTH
CAROLINA: BEGINNING AT AN IRON STAKE AT THE INTERSECTION OF
THE SOUTHERN PROPERTY LINE OF PEARSON STREET WITH THE
EASTERN PROPERTY LINE OF CENTER STREET, THENCE WITH AND
ALONG THE SOUTHERN PROPERTY LINE OF PEARSON STREET SOUTH 88
DEGREES 39' 00" EAST 205.60 FEET TO AN IRON STAKE,
CORNERING; THENCE SOUTH 05 DEGREES 57' 00" WEST 115.33 FEET
TO AN IRON STAKE, CORNERING; THENCE NORTH 89 DEGREES 16'
54" WEST 205.70 FEET TO AN IRON STAKE IN THE EASTERN
PROPERTY LINE OF SAID CENTER STREET, THENCE WITH AND ALONG
THE EASTERN PROPERTY LINE OF CENTER STREET NORTH 05 DEGREES
54' 12" EAST 117.60 FEET TO THE POINT AND PLACE OF
BEGINNING. BEING THE IDENTICAL PROPERTY DEVISED BY SARAH
PEARSON BALDREE TO SARAH BALDREE HUNT.

ADDRESS: 501 E CENTER ST.;  BLACK CREEK, NC 27813   TAX MAP
OR PARCEL ID NO.: ███████████

BOOK 2764 PAGE 910

Doc ID: 006425190004 Type: CRP
Recorded: 11/26/2018 at 01:39:36 PM
Fee Amt: $26.00 Page 1 of 4
Wilson, NC
Lisa J. Stith Register of Deeds
BK 2764 PG 910-913

Record & Return To:
Title 365
750 HIGHWAY 121 BYPASS
LEWISVILLE, TX 75067
412-893-2358

NC, Wilson

## ASSIGNMENT OF DEED OF TRUST (LINE OF CREDIT)

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, **Veripro Solutions, INC**, P.O. Box 3572, Coppell, TX, 75019, herein ("Assignor"), does hereby grant, sell, assign, transfer and convey, without recourse unto **REAL ESTATE GROWTH FUND, LLC**, 4300 Stevens Creek Blvd., Suite 275, San Jose, CA 95129 herein ("Assignee") that certain DEED OF TRUST (LINE OF CREDIT) recorded in Wilson County, NC referenced below;

Borrower: Mary L. Hulslander and Robert L. Hulslander, H/W T/E
Original Lender: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS"), SOLELY AS NOMINEE FOR CAPITAL ONE F.S.B., ITS SUCCESSORS AND ASSIGNS
Dated: 02/16/2005      Recorded: 02/28/2005
Book: 2088    Page: 705    Instrument: 002113 in Wilson, NC.
Loan Amount: $49,500.00
Trustee: TRUSTEE SERVICES OF CAROLINA, LLC
Property: 501 East Center Street, Black Creek, NC 27813

Legal description is attached hereto and made a part hereof as Exhibit A

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said document referenced above.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the document above-described.

BOOK 2764 PAGE 911

Page 2

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective
_10/13/18_ .

Veripro Solutions, INC

By: _____
Name:   GARY DAVENPORT
Title:    VICE PRESIDENT

BOOK 2 7 6 4 PAGE 9 1 2

## ACKNOWLEDGMENT


**State of Texas**

**County of Denton**


On ___/o/o/1&___, before me, Richard Joshua Hipo, Notary Public, in and for said State, personally appeared Gary Davenport, Vice-President of Veripro Solutions, INC, [✓] personally known to me or [___] proved to me on the basis of satisfactory evidence through the presentation of ___N/A___ [description of evidence]  to be the person whose name is subscribed to the within instrument who acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person or entity on behalf of which the person acted, executed the instrument.


WITNESS my hand and official seal.


_____

Notary Public: Richard Joshua Hipo

My Commission Expires: 3/4/22



NOTARY PUBLIC
STATE OF TEXAS
Richard Joshua Hipo
My Commission Expires
03/04/2022
ID No. 128195184

BOOK 2764 PAGE 913

## Exhibit "A"

THE FOLLOWING DESCRIBED REAL ESTATE IN THE CITY OR TOWN OF
BLACK CREEK, BLACK CREEK TOWNSHIP, WILSON COUNTY, NORTH
CAROLINA: BEGINNING AT AN IRON STAKE AT THE INTERSECTION OF
THE SOUTHERN PROPERTY LINE OF PEARSON STREET WITH THE
EASTERN PROPERTY LINE OF CENTER STREET, THENCE WITH AND
ALONG THE SOUTHERN PROPERTY LINE OF PEARSON STREET SOUTH 88
DEGREES 39' 00" EAST 205.60 FEET TO AN IRON STAKE,
CORNERING; THENCE SOUTH 05 DEGREES 57' 00" WEST 115.33 FEET
TO AN IRON STAKE, CORNERING; THENCE NORTH 89 DEGREES 16'
54" WEST 205.70 FEET TO AN IRON STAKE IN THE EASTERN
PROPERTY LINE OF SAID CENTER STREET, THENCE WITH AND ALONG
THE EASTERN PROPERTY LINE OF CENTER STREET NORTH 05 DEGREES
54' 12" EAST 117.60 FEET TO THE POINT AND PLACE OF
BEGINNING. BEING THE IDENTICAL PROPERTY DEVISED BY SARAH
PEARSON BALDREE TO SARAH BALDREE HUNT.

ADDRESS: 501 E CENTER ST.;  BLACK CREEK, NC 27813   TAX MAP
OR PARCEL ID NO.: ██████████

# EXHIBIT B

| Hulslander | | |
|---|---|---|
| BK 18-04036 - Edmundson, Myles and Sandra | | |
| | | |
| Payment Due Date | Payment Due Amount | Suspense |
| 9/20/2018 | $263.32 | |
| 10/20/2018 | $259.59 | |
| 11/20/2018 | $263.32 | |
| 12/20/2018 | $264.93 | |
| 1/20/2019 | $272.63 | |
| 2/20/2019 | $294.89 | |
| 3/20/2019 | $280.63 | |
| 4/20/2019 | $294.89 | |
| 5/20/2019 | $290.13 | |
| 6/20/2019 | $294.89 | |
| 7/20/2019 | $290.13 | |
| | $3,069.35 | |